UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DOUGLAS CHIARO,

                          Plaintiff,

       - against -

THE COUNTY OF NASSAU STATE OF NEW
YORK, NASSAU COUNTY POLICE DEPARTMENT,
THE COUNTY OF SUFFOLK STATE OF NEW
YORK, DAVID CHIARO, individually and in his
official capacity as an NASSAU COUNTY POLICE
OFFICER, DOUGLAS COTA #4242 and CANINE
OFFICER TRAMONTANA #4365, and Jane and
John Does as NASSAU & SUFFOLK POLICE
OFFICERS,

                          Defendants.
-------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 09-3702 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

In this Civil Rights § 1983 action, Defendants County of Nassau, Nassau County Police Department and David Chiaro ("Nassau Defendants") move for summary judgment, pursuant to Fed. R. Civ. P. 56, on the grounds that there is no genuine issue of material fact and that the Nassau Defendants are entitled to judgment as a matter of law.[1]  The Court has considered the parties' written submissions as well as the applicable case law.  For the reasons set forth below, I respectfully recommend to Judge Feuerstein that the Nassau Defendants' motion for summary judgment be GRANTED.

---

[1] Defendants County of Suffolk and Suffolk County Police Officers Cota and Tramontana ("Suffolk Defendants") join Nassau Defendants' motion for summary judgment with regard to the dismissal of Plaintiff's § 1985 claim.

## II.     STATEMENT OF FACTS

For purposes of deciding the Nassau Defendants' motion for summary judgment, the following facts are undisputed unless otherwise indicated.[2] At all times relevant to this action, Defendant David Chiaro was employed as a Nassau County Police Officer. However, on the night in question, David Chiaro was off-duty. Defs.' 56.1 Stmt. ¶ 3.

The Plaintiff and Defendant David Chiaro are two of four sons of Ralph and Edythe Chiaro. *Id.* ¶ 2. Sometime in May 2007, an Order of Protection was issued against the Plaintiff preventing him from interacting or communicating with his father, Ralph Chiaro. *Id.* ¶ 4. However, on July 17, 2007, the Plaintiff received a call from his cousin Alex Chiaro advising the Plaintiff that his father, who suffered from pancreatic cancer, was very ill. *Id.* ¶¶ 5-6. At the request of the same cousin, Plaintiff's brother, David Chiaro, also telephoned the Plaintiff on July 17 alerting him to their father's condition and offering him the opportunity to make his peace with their father by coming to visit him. *Id.* ¶¶ 8-9. Plaintiff took the train from Brooklyn to Sayville where David met him. *Id.* ¶ 10. The brothers arrived at their parents' home at approximately 2:00 a.m. on July 18, 2007. *Id.* ¶ 11. While at the home, Plaintiff was given an opportunity to speak to his sleeping father. *Id.* ¶ 12. What subsequently transpired is disputed by the parties.

---

[2]     The undisputed facts are taken from the parties' Rule 56.1 Statements. For efficiency, the Court will cite to the Nassau Defendants' Rule 56.1 Statement. For those facts that are in dispute, the Court will refer to the deposition transcripts of the Plaintiff and Defendant David Chiaro.

The Plaintiff claims that while he bent over to hug his father, David struck him with a blunt object in the left side of his head rendering him unconscious. *Id.* ¶¶ 13-14; Decl. of Liora M. Ben-Sorek ("Ben-Sorek Decl.") Ex. G, at 156-58. David Chiaro maintains that when he gave Plaintiff some time alone with their father, he heard his father making a gurgling noise and saw Plaintiff's hands around his neck choking him. In response, David testified that he grabbed the Plaintiff to get him off of his father and pulled him outside of the house. *See* Ben-Sorek Decl. Ex. I, at 195-97, 204.

Outside the home, Plaintiff states that he went to the neighbors house across the street, but passed out on the side of the house. Ben-Sorek Decl. Ex. G, at 161, 166. David contends that once outside, the Plaintiff ran away. Ben-Sorek Decl. Ex. I, at 203. David called 911 to report the incident which resulted in the Suffolk County Police responding to the home. Defs.' Stmt. ¶¶ 17-18. According to the Nassau Defendants, the Suffolk County Police requested the dispatch of a canine unit and helicopter to assist in searching for the Plaintiff who was eventually located hiding in bushes in a neighbor's yard by a Suffolk County canine unit. *Id.* ¶¶ 19, 21. The Nassau Defendants claim that David Chiaro did not participate in the search and was not present at the time of Plaintiff's arrest. *Id.* ¶¶ 20, 22. The Plaintiff, however, maintains that David falsely advised the Suffolk County officers where the Plaintiff went, understanding that a canine unit would be brought to look for him. Pl.'s 56.1 Stmt. ¶ 19. In addition, the Plaintiff claims that he was not hiding in the bushes, but instead was lying, unconscious, near one of the bushes. *Id.* ¶ 21. Further, the Plaintiff maintains that David was not only present during his arrest but was a few feet away in the street. *Id.* ¶ 22.

**III.     STANDARD OF REVIEW**

Fed. R. Civ. P. 56(a) dictates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n,* 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).  "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment."  *Id.*; *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor").  Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Dobbs v. Dobbs*, No. 06-

4

CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims") (internal quotation marks omitted). However, "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Fischl v. Armitage,* 128 F.3d 50, 56 (2d Cir. 1997) (citing *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997)).

## IV. DISCUSSION

The Nassau Defendants submit numerous arguments why summary judgment should be granted in their favor. Two such arguments – that the Nassau County Police Department ("NCPD") is not a suable entity and the claim against David Chiaro in his official capacity is duplicative of the claim against the County of Nassau – the Plaintiff does not contest. *See* Pl.'s Mem. of Law in Opp. To Nassau Defs.' Mot. for Summ. J. ("Pl.'s Mem.") at 18 n.2. In light of these concessions, I respectfully recommend to Judge Feuerstein that summary judgment be granted on these claims and that the NCPD be dismissed from this action.

The Nassau Defendants also allege that the Plaintiff is unable to establish any grounds for municipality liability against Defendant Nassau County. Moreover, with regard to Defendant David Chiaro, the Nassau Defendants maintain that there cannot be liability under Section 1983 since David was not a state actor at the time of the complained-of incident. Lastly, the Nassau Defendants (along with the Suffolk Defendants) assert that Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1985 has not been properly pled. These remaining arguments are individually addressed below.

### A. State Actor Under Section 1983

Essential to a Section 1983 action is that the complained of conduct must be by a person acting under color of state law. *See Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *Wong v. Yoo*, 649 F. Supp. 2d 34, 53 (E.D.N.Y. 2009). However, courts have clearly distinguished that "acts of police officers in the ambit of their personal pursuits are plainly excluded." *Pitchell*, 13 F.3d at 548 (quoting *Screws v. U.S.*, 325 U.S. 91, 111 (1945)). An inquiry into whether an act of an officer was personal instead of one taken under color of law does not lend itself to any bright line test. *See Wong*, 649 F. Supp. 2d at 54. Whether an officer was on or off duty at the time of the alleged incident is not determinative of whether he is acting under color of state law. *See Rivera v. La Porte*, 896 F.2d 691, 695-96 (2d Cir. 1990). A court must look to the totality of the circumstances surrounding the officer's acts, with principal consideration going to the nature of the officer's conduct and the relationship of the conduct to the officer's official duties. *See Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 475 (E.D.N.Y. 2002) (citing *Pitchell*, 13 F.3d at 548); *see also Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d 217, 228 (E.D.N.Y. 2010); *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009). Thus, an off-duty officer may face liability if he "invokes the real or apparent power of the police department" or "perform[s] duties prescribed generally for police officers." *Pitchell*, 13 F.3d at 548.

Based on the record submitted, the Court finds that the actions of David Chiaro were those of a private citizen. The Plaintiff claims that it is "totally irrelevant" that the circumstances surrounding David's actions involved his father. However, this fact is significant to the Court since it supports the position that David's actions were in response to a personal encounter. Whether it was striking the Plaintiff over the head with a blunt object as Plaintiff asserts or grabbing the Plaintiff and dragging him as David claims, the Court finds that such conduct did

not invoke the real or apparent power of the police department and bears no relationship to the conduct of an officer's duties. *Id.* Nor did any of the other conduct of David, which included dialing 911 and reporting his account of the incident to the Suffolk County Police, constitute David's exercising of official duties.[3] The Plaintiff has not offered any evidence that David utilized any authority or powers of the police department. In fact, the record establishes that David was not involved in how the Suffolk County Police responded to the incident, the search for the Plaintiff or his arrest. The mere fact that David may have identified himself as a police officer to the 911 officer, standing alone, does not change this conclusion.

Although the unique circumstances surrounding this case have not appeared in prior decisions, the relevant case law supports the conclusion that David's conduct, as a matter of law, was not that of a state actor.[4] The facts of this case, compared with those which have concluded that a reasonable jury could find state action, evidence the lack of necessary police conduct here. For instance, the Second Circuit in *Rivera* concluded that an off-duty police officer acted under color of law where the individual: (1) arrested the plaintiff using handcuffs issued by the New York City Department of Corrections; (2) placed the plaintiff in a police car; and (3) later accompanied him to the local precinct and central booking. *Rivera*, 896 F.2d at 696. Similarly,

---

[3] Indeed, such facts, including the furnishing of information to police officers, would not be enough to find a private party to be acting under color of law based on a "joint participation" theory of willful participation with a state actor. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999); *Shapiro v. City of Glen Cove*, 236 Fed. Appx. 645, 647 (2d Cir. 2007).

[4] The Court puts emphasis on the word "relevant" as Plaintiff relies on numerous cases which fall outside the purview of the Second Circuit. Such cases are not binding on this Court and are of lesser significance where an established body of case law exists within the Second Circuit.

the court in *Wong* held that a reasonable jury could find that the actions of the off-duty officer defendant – which included restraining the plaintiff by holding his arms behind his back and handcuffing the plaintiff with handcuffs given to him by one of the responding officers – were taken as a police officer. *Wong*, 649 F. Supp. 2d at 55 (E.D.N.Y. 2009). Likewise, the court in *Dean v. City of Buffalo*, 579 F. Supp. 2d 391 (W.D.N.Y. 2008) held that the evidence concerning the off-duty officer assisting in subduing and arresting the plaintiffs created a material question of fact whether the defendant was acting under color of law. *Dean*, 579 F. Supp. 2d at 406.

In the present action, there is no evidence of David Chiaro performing any duty of an officer, including physically restraining or arresting his brother. Plaintiff's unsupported factual assertion that "David Chiaro testified that he acted as a police officer to prevent Douglas Chiaro from strangling his father to death" is also unpersuasive. *See* Pl.'s Mem. at 12. Even drawing all reasonable inferences in Plaintiff's favor, such a statement is not only unsupported, but contrary to the record.[5] Defendant David Chiaro testified that when he saw Plaintiff with his hands around his father's neck "I went from my position in the kitchen to get Douglas off my father." *See* Ben-Sorek Decl. Ex. I, at 193-94. There is no mention whatsoever by David that his response to seeing his father allegedly being choked was because he is a police officer or that he perceived the situation as requiring him to prevent a crime from occurring. Instead, David's conduct was purely personal. *See Pitchell*, 13 F.3d at 548 (finding no color of law where defendant "was an off-duty cop, who while drunk in his own home, used his own personal

---

[5] The Court notes that although the Plaintiff did serve his response to Defendants' Rule 56.1 Statement, he failed to include any additional material facts which would form that basis for a genuine issue to be tried in accordance with Local Civ. R. 56.1(b).

8

weapon to shoot a guest"); *Bonsignore v. City of N.Y.*, 683 F.2d 635, 638-39 (2d Cir. 1982) ("Officer Bonsignore, who was off-duty when he shot his wife, was not acting under color of state law since his actions were not committed in the performance of any actual or pretended duty but were performed in the ambit of his personal pursuits.") (internal quotations and citations omitted). At best, David may have violated the law as a private citizen as opposed to a state actor when he allegedly struck the Plaintiff. *See Pitchell*, 13 F.3d at 548.

The Plaintiff also claims David testified that he was required by law to act and he was allegedly acting to prevent the commission of a crime, a duty imposed upon him by law. A careful review of the record, however, shows an incorrect representation of David's testimony regarding the duties of off-duty officers. David first testified – prior to being questioned about the conduct at issue in this case – that it was his understanding that the New York Criminal Procedure Law authorizes and may require an off-duty officer to use or utilize police action. *See* Ben-Sorek Decl. Ex. I, at 36. However, when asked "[i]f you act in a situation where you witness a misdemeanor or a felony being committed in your presence, you're acting because you are required by the criminal procedure laws to act as a police officer in those situations," David responded "[n]ot solely. I would disagree with you." *Id.* at 38. David further testified: "you're expecting with your question to have a police officer act on every misdemeanor or felony regardless of the danger, regardless of the circumstances. Regardless of the totality of the circumstances." *Id.* at 39. The record clearly reflects David's disagreement with the proposition that any time an off-duty officer acts in a situation where a misdemeanor or felony is being committed, he is required to do so by the criminal procedure laws.

Nevertheless, the Plaintiff fails to provide the Court with any proof that, in the circumstances of this case, David Chiaro was required by law to act.[6] In fact, the Plaintiff does not reference any New York Criminal Procedure Law section or Nassau County Police Department regulation which supports the unconditioned (or any) duty asserted by the Plaintiff. The Court notes that CPL § 140.25 states only that:

> [a] peace officer, when outside the geographical area of his employment, may, anywhere in the state, arrest a person for a felony when he has reasonable cause to believe that such person has committed such felony in his presence, provided that such arrest is made during or immediately after the allegedly criminal conduct or during the alleged perpetrator's immediate flight therefrom.

CPL § 140.25(4). In light of the fact that Plaintiff has not come forward with any evidence to support a finding that David's conduct was under color of state law, I respectfully recommend to Judge Feuerstein that summary judgment on Plaintiff's § 1983 claim against David Chiaro be granted and that David Chiaro be dismissed from this action.

**B.** *Monell* **Claim**

The Nassau Defendants contend that the Plaintiff is unable to establish municipal liability. Further, the Nassau Defendants maintain that since the Plaintiff's opposition papers did not address or respond to their *Monell* argument, it should be dismissed.

As an initial matter, the Nassau Defendants are correct that because the Plaintiff's opposition papers did not address the Nassau Defendants' motion for summary judgment on this particular claim, "the claim is deemed abandoned and summary judgment could be granted on

---

[6] Some courts have adopted the view that "[a]n officer can also purport to exercise official authority by intervening in a dispute pursuant to a duty imposed by department regulations." *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994); *Stengel v. Belcher*, 522 F.2d 438, 440-41 (6th Cir. 1975)

that basis alone." *Blake v. Race*, 487 F. Supp. 2d 187, 217 (E.D.N.Y. 2007); *see also Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). Nevertheless, even considering the substance of Plaintiff's *Monell* claim, the Court finds it to be without merit.

Under *Monell*, a municipality is liable under section 1983 only if "its policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the complained of injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The failure to train or supervise police officers may also serve as a basis for municipal liability under § 1983 only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). However, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Claudio*, 675 F. Supp. 2d at 408. In fact, the Second Circuit has instructed:

> *Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where the organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.

*Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). Therefore, "[o]nce a 'district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendant's liability under *Monell* [i]s entirely correct." *Claudio*, 675 F. Supp. 2d at 408-09 (quoting *Segal*, 459 F.3d at 219). Here, the Court has determined that David, the only named defendant employed by Nassau County, was not acting under color of law on the night in

11

question. Without a state actor, it follows that there cannot be an independent constitutional violation. And without an independent constitutional violation, a *Monell* claim must fail. *See id.* at 410.

Even assuming state action, the record is wholly inadequate to sustain a *Monell* claim. For one, the record contains no evidence of Nassau County's failure to train its police officers, let alone any failure that amounted to the deliberate indifference element needed to allege an inadequate training *Monell* claim. *See City of Canton*, 489 U.S. at 388. Not only has the Plaintiff failed to identify the deficiency in Nassau County's training, but the Plaintiff has not proffered any evidence that a lack of adequate training was the actual cause of his constitutional injury. *See id.* at 390-91. In addition, Plaintiff's attempt to sustain a *Monell* claim through Nassau County's alleged failure to properly investigate complaints against their police officers and take appropriate action against them is also without merit. During Plaintiff's deposition, he testified to only one specific alleged improper investigation by Nassau County involving David. *See* Ben-Sorek Decl. Ex. H, at 437-44. However, during that same deposition, the Plaintiff testified that the alleged victim of this incident as well as the Plaintiff were interviewed by the Internal Affairs Unit of the NCPD. *Id.* Simply because the Plaintiff did not hear anything further from Nassau County is an insufficient basis to support a claim that Nassau County conducts improper internal investigations. Moreover, one isolated instance of police behavior is inadequate to impose liability under *Monell*. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). In light of the non-existence of a state actor and the unsupported *Monell* claim asserted by the Plaintiff, this Court respectfully recommends to Judge Feuerstein that summary judgment on the *Monell* claim be granted.

### C. Conspiracy Claim Under Section 1985

The Nassau Defendants, joined by the Suffolk County Defendants, argue that Plaintiff fails to properly plead a claim of conspiracy under 42 U.S.C. § 1985. As an initial matter, the Court is uncertain whether Plaintiff is even asserting a conspiracy claim under Section 1985. Although the original Complaint specifically pled a conspiracy cause of action under Section 1985, the Amended Complaint contains no such claim. *Compare* Ben-Sorek Decl. Ex. A *with* Ben-Sorek Decl. Ex. B. Nevertheless, the basis for the Nassau Defendant's motion is the allegation contained in Paragraph 41 of the Amended Complaint which states that "David Chiaro acted in concert with Canine Officer Tramontana in setting a dog on Plaintiff which viciously bit him causing serious injuries." In addition, and as discussed *infra*, Plaintiff's failure to address this argument in his papers provides the Court with adequate grounds to dismiss this claim. However, even addressing the merits, and to the extent the Amended Complaint is construed to allege a conspiracy claim pursuant to Section 1985, the Court finds no support in the record for such a claim to survive.

Section 1985(3) prohibits two or more individuals from conspiring to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ." 42 U.S.C. § 1985(3). To allege a violation, a plaintiff must claim: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;(3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a United States citizen. *See Emmons v. City Univ. of N.Y.,* 2010 WL 2246413, *14 (E.D.N.Y. June 2, 2010) (citing *United Bhd. of Carpenters & Joiners of Am. Local*

13

*610 v. Scott,* 463 U.S. 825, 828-29 (1983). "Moreover, a §1985(3) violation must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971) (internal quotation marks omitted). "In other words, the intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." *Id.* (citing *Scott*, 463 U.S. at 850).

Here, the Plaintiff has neither alleged membership in any recognized class nor suggested any racial or class based motive. Furthermore, the Plaintiff has not provided the Court with any specific evidence supporting any meeting of the minds between David and any of the Suffolk County Defendants. *See Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003) (holding that a plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end"). In fact, the sole allegation of a conspiracy contained in the Amended Complaint falls far short of what is required of a party to plead a conspiracy claim and would not have survived a motion to dismiss had one been made. *See Vertical Broad., Inc. v. Town of Southampton,* 84 F. Supp. 2d 379, 389-90 (E.D.N.Y. 2000) (finding that conspiracy claims under section 1985(3) must contain "specific factual allegations," and a complaint consisting of "nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss"). As such, the Court respectfully recommends to Judge Feuerstein that any claim construed as alleging a conspiracy be dismissed.[7]

---

[7] The Court purposefully recommended the dismissal of "any claim alleging a conspiracy" since the sole allegation in the Amended Complaint and the record submitted to the Court fails to plead, as a matter of law, a Section 1983 conspiracy. *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999) (Listing the elements of a § 1983 conspiracy as: "(1) an agreement between two

V.   **CONCLUSION**

For the reasons discussed above, I respectfully recommend to Judge Feuerstein that the Nassau Defendants' motion for summary judgment be GRANTED, thereby dismissing Defendants Nassau County, Nassau County Police Department and David Chiaro from this action. I further recommend that summary judgment be GRANTED in favor of the Suffolk Defendants with regard to Plaintiff's § 1985 claim.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6, 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein. Any request for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchs. Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

---

or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.").

**SO ORDERED.**

Dated: Central Islip, New York
      July 29, 2011

                                      <u>/s/ A. Kathleen Tomlinson</u>
                                      A. KATHLEEN TOMLINSON
                                      U.S. Magistrate Judge